**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **LIGHTHOUSE CONSULTING GROUP, LLC,**<br><br>　　　　　　**Plaintiff,**<br><br>**　v.**<br><br>**ALLY FINANCIAL, INC.,**<br><br>　　　　　　**Defendant.** | **CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Lighthouse Consulting Group, LLC ("Plaintiff"), by and through its undersigned counsel, files this Original Complaint against Defendant Ally Financial, Inc. ("Ally" or "Defendant") as follows:

## NATURE OF THE ACTION

1.　　　　This is an action for violation of 35 U.S.C. §§271(a) and 35 U.S.C. §§271(b). This is a patent infringement action to stop Defendant's infringement of United States Patent No. 8,590,940 ("the '940 patent") entitled "Ubiquitous Imaging Device Based Check Image Capture" and United States Patent No. 7,950,698, reissued as US RE44,274 ("the '698 patent") entitled "Ubiquitous Imaging Device Based Check Image Capture. A true and correct copy of the '940 and US RE44,274 ("the '698 patent") patents, (collectively "patents in suit") are attached hereto as Exhibit A and Exhibit B, respectively. Plaintiff is the owner by assignment of the '940 and '698 patents. Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

2.　　　　Plaintiff is a limited liability company having a principal place of business located at 27 William Fairfield Drive Wenham, MA 01984.

3.     Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 500 Woodward Ave Detroit, MI 48226.  Defendant can be served with process by serving The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Defendant maintains brick and mortar offices all over the country including, but not limited to the Western District of Texas some of which are located at, 8415 Datapoint Dr., San Antonio, TX 78229.

## JURISDICTION AND VENUE

4.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq., including 35 U.S.C. §§271 and 281-285.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§1331 and 1338.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(b).  Defendant is subject to personal jurisdiction in this district.  Additionally, Defendant has regular and established places of business in this district, and upon information and belief, Defendant has individually transacted business in this district and/or committed acts of patent infringement in this district.  Defendant maintains brick and mortar offices all over the country including, but not limited to the Western District of Texas some of which are located at, 8415 Datapoint Dr, San Antonio, TX 78229.

6.     This Court has personal jurisdiction over Defendant.  Defendant has conducted and does conduct business within the Western District of Texas.  Defendant, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including products and/or services that infringe the Asserted Patents, as described more

2

particularly below) in the United States, the State of Texas, and the Western District of Texas.

Defendant, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and/or used by consumers in the Western District of Texas.  These infringing products and/or services have been and continue to be purchased and/or used by consumers in the Western District of Texas.  Defendant has committed acts of patent infringement within the State of Texas and, more particularly, within the Western District of Texas.

## THE ASSERTED PATENTS

7.      This lawsuit asserts causes of action for infringement of United States Patent No. 8,590,940 and United States Patent No. 7,950,698, reissued as US RE44,274.

8.      On November 26, 2013, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,590,940 ("the '940 Patent") entitled, "Ubiquitous Imaging Device Based Check Image Capture" to Robert P. Popadic, John R. Popadic, Thomas E. Gazda, Stuart J. Lipoff and assigned to Plaintiff, Lighthouse Consulting Group, LLC. Lighthouse Consulting Group, LLC is the owner by assignment of the '940 patent and holds all right, title and interest to the '940 Patent.  A true and correct copy of the '940 patent is attached as Exhibit A.

9.      Claim 1 of the '940 patent describes, among other things:

1.      A system for remote depositing of a plurality of negotiable instruments comprising:

a carrier for receiving the plurality of negotiable instruments, the carrier having an identifier on a front and back side of the carrier, the identifier being independent of data on the negotiable instruments and unique to the carrier, and the carrier being designed to permit one front image of all the negotiable instruments, and one back image of all the negotiable instruments to be generated;

an imaging device for separately generating and transmitting one electronic front image of all the negotiable instruments and one electronic back image of all the negotiable

instruments and the unique identifier, while the negotiable instruments are secured to the carrier;

a link configured to permit the image device to be in communication with a network for directing the front and back electronic images to a remote location for subsequent pairing of the front and back images of the negotiable instruments using the unique identifier; and

a receiving unit at the remote location for receiving the separately transmitted front and back images of the negotiable instruments, the receiving unit having memory for storing the received images and having software designed to break down the individual front and back images of all negotiable instruments from the one front image of all the negotiable instruments and one back image of all the negotiable instruments and subsequently pair the front image of each negotiable instrument having the associated unique identifier to a separately received corresponding back image of the corresponding negotiable instrument having the associated unique identifier, so as to provide a complete image of each negotiable instrument.

10.     Claim 6 of the '940 patent describes, among other things:

6. a system for remote depositing of a plurality of negotiable instruments comprising:

a carrier for receiving the plurality of negotiable instruments and designed to permit one front image of all the negotiable instruments and one back image of all the negotiable instruments, when the negotiable instruments are secured to the carrier, to be generated, the carrier having an identifier independent of data on the negotiable instruments and unique to the carrier, and a surface area for providing deposit information;

an imaging device for separately generating and transmitting one electronic front image of all the negotiable instruments one electronic back image of all the negotiable instruments and the unique identifier, while the negotiable instruments are secured to the carrier;

a link configured to permit the image device to be in communication with a network for directing the front and back electronic images to a remote location for subsequent pairing of the front and back images of the negotiable instruments using the unique identifier; and

a receiving unit at the remote location for receiving the separately transmitted front and back images of the negotiable instruments, the receiving unit having memory for storing the received images and having software designed to break down the individual front and back images of all negotiable instruments from the one front image of all the negotiable instruments and one back image of all the negotiable instruments and subsequently pair the front image of each negotiable instrument having the associated unique identifier to a separately received corresponding back image of the corresponding negotiable instrument having the associated unique identifier, so as to provide a complete image of each negotiable instrument.

11.     The '940 Patent is owned by Lighthouse Consulting Group, LLC and the technology covered by said patent was developed by Lighthouse Consulting Group, LLC, its predecessors, and/or related companies.   To the extent 35 U.S.C. §287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '940 patent and is entitled to recover pre-suit damages.

12.     On May 21, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,950,698 ("the '698 Patent") entitled, "Ubiquitous Imaging Device Based Check Image Capture" to Robert P. Popadic, John R. Popadic, Thomas E. Gazda, Stuart J. Lipoff and assigned to Plaintiff, Lighthouse Consulting Group, LLC. Lighthouse Consulting Group, LLC is the owner by assignment of the '698 patent and holds all right, title and interest to the '698 patent reissued as US RE44,274.  A true and correct copy of the '698 patent reissued as US RE44,274 is attached as Exhibit B.

13.     Claim 1 of the '698 patent describes, among other things:

1.     A method for remote depositing of a negotiable instrument, the method comprising:

Providing a carrier designed to permit a front image and a back image of the negotiable instrument, when the negotiable instrument is secured to the carrier, to be generated;

Securing the negotiable instrument to the carrier;

Creating an identifier on a front side and back side of the carrier, the identifier being unique to the carrier and associated therewith;

Generating an electronic image of the front and back of the negotiable instrument along with the unique identifier on the carrier while the negotiable instrument is secured to the carrier;

Transmitting the electronic image of the front and back of the negotiable instrument and the unique identifier to a remote location; and

Pairing, at the remote location, the front image of the negotiable instrument having the associated unique identifier to a separately received corresponding back image of the negotiable instrument having the associated unique identifier, to provide a complete image of the negotiable instrument.

14.     Claim 9 of the '698 patent describes, among other things:

9.      A method for remote depositing of a negotiable instrument, the method comprising:

Providing a carrier designed to permit a front image and a back image of the negotiable instrument, when the negotiable instrument is secured to the carrier, to be generated;

Generating an identifier unique to the carrier and associated therewith;

Providing an area on the surface of the carrier to provide deposit information;

Securing a the negotiable instrument to the carrier;

Transmitting the electronic image of the front and back of the carrier along with the negotiable instrument and at least the unique identifier associated with the carrier to a remote location; and

Pairing, at the remote location, the front image of the negotiable instrument having the associated unique identifier to a separately received corresponding back image of the negotiable instrument having the associated unique identifier, to provide a complete image of the negotiable instrument.

15.     The '698 Patent is owned by Lighthouse Consulting Group, LLC and the technology covered by said patent was developed by Lighthouse Consulting Group, LLC, its predecessors, and/or related companies. To the extent 35 U.S.C. §287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '698 patent and is entitled to recover pre-suit damages.

16.     The Asserted Patents are valid and enforceable.

## UBIQUITOUS IMAGING DEVICE BASED CHECK IMAGE CAPTURE

17.     The first printed checks are traced to 1762 and British Banker Lawrence Childs. *See*, http://echeck.org/the-brief-history-of-checking-using-checks-as-for-money/ (last accessed September 19, 2019).

18.     Remote deposit was ushered in with the passage of the Check 21 Act, which gave scanned images of checks the same legal standing as the original paper documents. The primary reason for the Check 21 Act was to speed up the check clearing process between banks, by allowing

them to exchange check images rather than the original physical checks – but another effect was to allow the existence of remote deposit.

19.     At first, remote deposit was mostly geared toward larger businesses, or those that received especially high numbers of checks every month.  That is because back in 2004-05, the only way to scan checks for remote deposit was to use a high volume check scanner – an expensive proposition that only made sense for the largest businesses.  Fortunately, it was not long before lower-priced check scanners (such as the CheXpress CX30, introduced in 2008) became available, opening the door for smaller businesses to take advantage of the technology as well.

20.     Most banks at this time still charged a monthly fee between $25-$70 to use RDC. The introduction of lower-priced check scanners made it possible for some banks and RDC providers to give the scanners away for free in exchange for a 1 or 2-year commitment – much the same as mobile phone carriers still do.  This marked the start of a 2-3-year period where the service was useful for most businesses, but still too costly to be attractive to individuals or to those running home-based microbusinesses.

21.     Around 2006-2008, many banks and other RDC providers began experimenting with lower-cost and pay-as-you go remote deposit services and began supporting off-the-shelf equipment such as flatbed scanners and all-in-one printers.  This brought remote deposit within reach of ever-smaller businesses and some individuals.

22.     More recently, starting in 2009 and 2010, RDC mobile apps began using smartphone cameras to capture check images, bypassing PCs and scanners entirely.  These apps were generally free or charged a low per-item fee, and appealed to individual customers.  The manual process and stricter limits on deposits however, can make them unwieldy for business use. *See*, https://www.digitalcheck.com/history-of-rdc/ (Last accessed on September 19, 2019).

23.     The Check Clearing for the 21st Century Act was signed into law on October 28, 2003 and became effective on October 28, 2004.  The "Check 21" Act was intended to allow banks to exchange images instead of physical checks.  Since the original physical checks no longer needed to be presented, banks could capture images at branches and other locations and allow their customers to remotely deposit their checks by submitting an image of the check rather than the physical check itself.  At the time of the Act however, the only way to remotely deposit checks was with a specialized machine such as a dedicated scanner that was expensive, bulky and built only for this singular purpose.

24.     More importantly, the law is clear that a check does not become a "negotiable instrument" until both sides of the check are accurately paired together either physically or digitally.  An inaccurate pairing could result in an erroneous deposit and rejection of the check for payment by the check-writer's bank.  Of course, the banking industry cannot risk inaccurate pairing of check images.  The dedicated scanners therefore, were able to scan both sides of a check simultaneously and keep their images paired together, thus assuring the bank of a valid negotiable instrument accurately deposited in every instance.  The high cost of such dedicated scanners however, meant that only wealthy institutions could afford them, thus severely limiting the field of remote deposit banking.

25.     Recognizing this new technology, Lighthouse Consulting Group (LCG) invented the patented technology that allowed for remote deposit capture (RDC) to be applied without dedicated scanners.

26.     Below is a timeline of events that occurred subsequent to the Check 21 Act being enacted.

   a.  10-28-04: Check 21 Act becomes effective
   b.  10-17-05: LCG provisional application filed

     c.   10-16-06: LCG '698 patent application filed
     d.   2009: first RDC mobile app
     e.   04-15-11: LCG '940 patent application filed.
     f.   05-31-11: LCG '698 patent issues.
     g.   11-26-13: LCG '940 patent issues.

27.     The LCG patents are patent eligible under 35 U.S.C. §101 because the claimed "unique identifier" provides a technical solution to a technical problem.

28.     In addition to keeping the front and back images of the check paired, the dedicated scanner by its physical control of the check assured that the image made was of all of the check and only of the check; and that the image was of the quality needed for submission for clearing under Check 21. The Lighthouse Consulting Group, LLC '940 patent teaches how a ubiquitous imaging device can be used to insure a complete image of needed quality of the check; and then extract (break down) the check front and back images from the larger images made. These are technical advances over the prior art and enable functionality not previously available to ubiquitous imaging devices such as fax machines and mobile phones (when smart phones became available in 2007, after the filing of the provisional patent application in 2005).

29.     Without accuracy, there is simply no remote deposit checking industry. Without security, there is simply no banking industry. It is important to note that the Check 21 Act makes no mention of the identifiers – the banks did not know that the advent of remote deposit capture depended on Lighthouse Consulting Group, LLC's technical advance.

30.     At the time of the Check 21 Act, the computer technology that was able to practice electronic deposit banking was limited to only specialized machines such as dedicated scanners, that did not need identifiers. By using identifiers on the front and back of check images, the industry was able "to overcome a problem specifically arising in the realm of computer networks." Without identifiers, remote deposit capture would only be possible by the few wealthy institutions

that could afford a dedicated scanner.  Most importantly, before electronic banking via computers, banks had no need to include front and back identifiers in the physical deposit of checks. Accordingly, this novel concept is a technical innovation born out of necessity to assure both accuracy and security in the modern computer realm.

31.     Mitek reports that major banks save $3.88 with each mobile check deposit compared to a teller deposit. *See*, https://www.retaildive.com/ex/mobilecommercedaily/mobile-users-deposit-over-40-billion-in-checks-via-mobile-mitek. (Last accessed September 19, 2019).

32.     According to the 2016 Federal Reserve Payment Study, Americans wrote 17.3B checks in 2016.  *See*,  https://www.natmc.org/assets/files/mediaLibrary/FR-Payments-Study-2016_web_final%5B30655%5D.pdf (Last accessed September 19, 2019).

33.     According to the U.S. Federal Deposit Insurance Corporation, there were 6,799 FDIC-insured commercial banks in the USA as of February 2014. *See*, https://corporatefinanceinstitute.com/resources/careers/companies/top-banks-in-the-usa/    (Last accessed September 19, 2019).

34.     Defendant introduced mobile checking deposit functionality in their mobile banking   application   on   or   about   November   28,   2012.   *See*, https://thefinancialbrand.com/26412/ally-bank-mobile-remote-check-deposits/   (Last   accessed September 19, 2019).

## COUNT I – PATENT INFRINGEMENT OF U.S. PATENT NO. 8,590,940

35.     Plaintiff refers to and incorporates herein the allegations of Paragraphs 1-34 above.

36.     The '940 patent was duly and legally issued by the United States Patent and Trademark Office on November 26, 2013 after full and fair examination.   Plaintiff is the owner by assignment of the '940 patent and possesses all rights of recovery under the '940 patent,

including the exclusive right to sue for infringement and recover past damages and obtain injunctive relief.

37.     Defendant owns, uses, operates, advertises, controls, sells, and otherwise provides systems that infringe the '940 patent.  The '940 patent provides, among other things, "A system for remote depositing of a plurality of negotiable instruments comprising: (1) a carrier for receiving the plurality of negotiable instruments, the carrier having an identifier on a front and back side of the carrier, the identifier being independent of data on the negotiable instruments and unique to the carrier, and the carrier being designed to permit one front image of all the negotiable instruments, and one back image of all the negotiable instruments to be generated; (2) an imaging device for separately generating and transmitting one electronic front image of all the negotiable instruments and one electronic back image of all the negotiable instruments and the unique identifier, while the negotiable instruments are secured to the carrier; (3) a link configured to permit the image device to be in communication with a network for directing the front and back electronic images to a remote location for subsequent pairing of the front and back images of the negotiable instruments using the unique identifier; and (4) a receiving unit at the remote location for receiving the separately transmitted front and back images of the negotiable instruments, the receiving unit having memory for storing the received images and having software designed to break down the individual front and back images of all negotiable instruments from the one front image of all the negotiable instruments and one back image of all the negotiable instruments and subsequently pair the front image of each negotiable instrument having the associated unique identifier to a separately received corresponding back image of the corresponding negotiable instrument having the associated unique identifier, so as to provide a complete image of each negotiable instrument."

38.     Defendant has been and is now infringing the '940 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, directly and/or indirectly or through intermediaries, making, using, importing, testing, providing, supplying, distributing, selling, and/or offering for sale systems (including, without limitation, the Defendant's products including the Defendant's Mobile Checking Application identified herein as the "Accused Instrumentality") that provide a system for depositing checks via an image capture device coupled with an electronic transmission means, utilizing a carrier including a feature to permit alignment of the check in a specified manner, receiving front and bank images of the deposited check by the bank server, pairing the front and back images of the deposited check for purposes of depositing the check into the user's bank account, covered by one or more claims of the '940 patent to the injury of Lighthouse Consulting Group, LLC. Defendant is directly and/or indirectly infringing, literally infringing, and/or infringing the '940 patent under the doctrine of equivalents. Defendant is thus liable for infringement of the '940 patent pursuant to 35 U.S.C. §271.

39.     Defendant has had knowledge of the '940 patent and has had specific intent to infringe the '940 patent since at least the filing date of the Original Complaint.

40.     Defendant infringes Independent claim 1 of the '940 patent by having a system for remote depositing of a plurality of negotiable instruments comprising:



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). Defendant has a mobile check deposit system.

The following element of claim 1 is infringed by the Doctrine of Equivalents.

*a carrier for receiving the plurality of negotiable instruments, the carrier having an identifier on a front and back side of the carrier, the identifier being independent of data on the negotiable instruments and unique to the carrier, and the carrier being designed to permit one front image of all the negotiable instruments, and one back image of all the negotiable instruments to be generated; wherein the carrier further includes a feature to permit alignment of the negotiable instrument in a specified manner;*

Defendant's mobile app is involved in a number of claim elements. It is the equivalent of the carrier when it receives the checks for imaging, assigns a unique identifier to the imaging to be done, is designed to permit one front and back image of the checks, and permits alignment of the check in a specific manner for imaging. The mobile app also does the elements of imaging of fronts and backs of checks and separate transmission of those images.

13



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). Defendant has a mobile check deposit system. Screenshot shows a feature to permit alignment of the negotiable instrument in a specified manner.

The following elements of claim 1 are literally infringed.

*an imaging device for separately generating and transmitting one electronic front image of all the negotiable instruments and one electronic back image of all the negotiable instruments and the unique identifier, while the negotiable instruments are secured to the carrier;*



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019).

Screenshot shows the mobile phone is being used as an imaging device and that the front and back of the check are imaged separately. The horizontal images show the check supported on the surface and include the surface in the image.

*a link configured to permit the image device to be in communication with a network for directing the front and back electronic images to a remote location for subsequent pairing of the front and back images of the negotiable instruments using the unique identifier; and a receiving unit at the remote location for receiving the separately transmitted front and back images of the negotiable instruments, the receiving unit having memory for storing the received images and having software designed to break down the individual front and back images of all negotiable instruments from the one front image of all the negotiable instruments and one back image of all the negotiable instruments and subsequently pair the front image of each negotiable instrument having the associated unique identifier to a separately received corresponding back image of the corresponding negotiable instrument having the associated unique identifier, so as to provide a complete image of each negotiable instrument.*

Upon information and belief, 1) the images are received by the Defendant, 2) the images of the check front and back are broken down from the captured images, and 3) the images are paired using a unique identifier, as they were separately transmitted.

Defendant directly infringes dependent claims 4 and 5:

*Wherein the negotiable instrument is a check or deposit slip.*



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). Screenshot shows a check is being deposited.

*Wherein the image device includes a device designed to transmit electronic data, other image devices compatible with ITU-T recommendations T.30 or T.4, other communications protocols compatible with banking industry standards, or combination thereof.*

---

▼ **How do I get started with Ally eCheck Deposit℠?**

To make a deposit using the **Ally Mobile App**: Log in, choose your account and tap **Deposit Checks**. Snap a picture of both sides of your endorsed check then submit your deposit.

To make a deposit **online**: **Upload** scanned images of the front and back of your endorsed check then submit your deposit.

---

**Source**: https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). Screenshots shows a check is being deposited using a device designed to transmit electronic data.

     41.    Defendant also infringes under 35 U.S.C. §271(b) by inducing infringement of the '940 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, advising, encouraging, or otherwise inducing others to perform the steps and/or operate the systems claimed by the '940 patent to the injury of Plaintiff.  Defendant actively instructs their customers to use the Accused

16

Instrumentality in a way that infringes the '940 patent. Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '940 patent, and by continuing the actions described herein, has specific intent to induce infringement of the '940 patent pursuant to 35 U.S.C. § 271(b).

42.    Specifically, Defendant advertises the Accused Instrumentality to its Customers, and instructs its Customers to operate the Accused Instrumentality in a way that infringes, such that when Defendant's Customers follow Defendant's instructions, the '940 patent is infringed.

43.    Since the filing of the Original Complaint, Defendant has had knowledge of the '940 patent pursuant to 35 U.S.C. §271(b), and by continuing the actions described above, by continuing to sell the Accused Instrumentality and instruct their Customers to use the Accused Instrumentality in an infringing manner, Defendant has had specific intent to induce infringement of the '940 patent pursuant to 35 U.S.C. §271(b).

44.    Defendant's customers use the Accused Instrumentality as instructed by Defendant and in some cases it is set up and installed by Defendant, and in doing so, complete all elements in at least Claims 1, 4, 5, 6, 9, and 10 of the '940 patent making Defendant's customers direct infringers of the '940 patent.  Defendant specifically intended for its customers to infringe the '940 patent because Defendant continues to advertise and provide to its Customers manuals and product information on their website that when followed necessarily infringe the '940 patent.

▼ **How do I get started with Ally eCheck Deposit℠?**

To make a deposit using the **Ally Mobile App:** Log in, choose your account and tap **Deposit Checks.** Snap a picture of both sides of your endorsed check then submit your deposit.

To make a deposit **online: Upload** scanned images of the front and back of your endorsed check then submit your deposit.

**Source**: https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).

17

45.     Defendant instructs its customers, such that when Defendant's customers follow Defendant's instructions, each of said customers necessarily use the Accused Instrumentality in an infringing manner as claimed in the '940 patent making Defendant's customers direct infringers of the '940 patent. *See* https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).

46.     Defendant also infringes under 35 U.S.C. §271(c) by contributing to infringement of the '940 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, offering for sale, selling, or importing the Accused Instrumentality, and advising, encouraging, and contributing so that others can use the systems claimed by the '940 patent to the injury of Plaintiff.

47.     Specifically, Pursuant to 35 U.S.C. §271(c), Defendant advertises, sells, and provides the Accused Instrumentality to its customers, and instructs its Customers, such that when Defendant's Customers follow Defendant's instructions, each of said Customers necessarily infringe one or more systems claimed in the '940 patent making Defendant's Customers direct infringers of the '940 patent.

48.     The Accused Instrumentality that Defendant provides to its Customers are designed specifically for use by their Customers in an infringing manner.  The functionality described in the '940 patent is necessary for the Accused Instrumentality provided by Defendant to its Customers to work for its advertised purpose. *See* https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).

49.     There is no substantial non-infringing use for the Accused Instrumentalities because the accused instrumentality is especially made or adapted for use by its Customers to infringe the '940 patent.

50.     Defendant continues advising, encouraging, contributing, or otherwise inducing others to use the systems claimed by the '940 patent to the injury of Plaintiff.  Since at least the filing of the Original Complaint, Defendant has had knowledge of the '940 patent, and by continuing the actions described above, has specific intent to induce infringement of the '940 patent pursuant to 35 U.S.C. §271(b), and has further contributed to said infringement of the '940 patent by their Customers by providing them with the Accused Instrumentalities so that their Customers could directly infringe the '940 patent pursuant to 35 U.S.C. § 271(c). *See* https://www.ally.com/help/bank/deposits.html (Last Accessed September 19, 2019). Specifically, Defendant instructs their Customers who visit their various branches to download the mobile banking application and teaches them how to perform mobile check deposits. Sometimes these mobile check deposit transactions happen inside their various branches at the instruction of Defendant's employees.

### COUNT II – PATENT INFRINGEMENT OF U.S. PATENT NO. 7,950,698

51.     Plaintiff refers to and incorporates herein the allegations of Paragraphs 1-50 above.

52.     The '698 patent was duly and legally issued by the United States Patent and Trademark Office on May 21, 2011 after full and fair examination.  Plaintiff is the owner by assignment of the '698 patent and possesses all rights of recovery under the '698 patent, including the exclusive right to sue for infringement and recover past damages and obtain injunctive relief.

53.     Defendant owns, uses, operates, advertises, controls, sells, and otherwise provides methods that infringe the '698 patent.  The '698 patent provides, among other things, "a method or corresponding apparatus for remote transmission of a negotiable instrument.  In an example of embodiment, the process provides a carrier that secures a negotiable instrument.  Next, the process creates a unique identifier, associated with the carrier, and generates an electronic image of the

negotiable instrument.  After generating the electronic image, the process transmits the electronic image of the negotiable instrument and the unique identifier to a remote location.  The negotiable instrument may be transmitted via a fax, a scanner, a device designed to transmit electronic data, other image device compatible with ITU-T recommendations T.30 or T.4, or combination thereof. The process may also verify the negotiable instrument has a valid endorsement, verify image quality of the electronic image to ensure compliance with financial industry standards, or validate any received security information."

54.     Defendant has been and is now infringing the '698 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, directly and/or indirectly or through intermediaries, making, using, importing, testing, providing, supplying, distributing, selling, and/or offering for sale systems (including, without limitation, the Defendant's products including the Defendant's Mobile Checking Application identified herein as the "Accused Instrumentality") that provide a method for depositing checks via an image capture device coupled with an electronic transmission means, utilizing a carrier including a feature to permit alignment of the check in a specified manner, receiving front and bank images of the deposited check by the bank server, pairing the front and back images of the deposited check for purposes of depositing the check into the user's bank account, covered by one or more claims of the '698 patent to the injury of Lighthouse Consulting Group, LLC. Defendant is directly and/or indirectly infringing, literally infringing, and/or infringing the '698 patent under the doctrine of equivalents. Defendant is thus liable for infringement of the '698 patent pursuant to 35 U.S.C. §271.

55.     Defendant has had knowledge of the '698 patent and has had specific intent to infringe the '698 patent since the filing of the Original Complaint.

56.     Defendant infringes Independent Claim 1 by having a method for remote depositing of a negotiable instrument, the method comprising:



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). Screenshots shows that Defendant has a mobile check deposit system.

The following element of Claim 1 is infringed by the Doctrine of Equivalents.

*Providing a carrier designed to permit a front image and a back image of the negotiable instrument, when the negotiable instrument is secured to the carrier, to be generated;*

Defendant's mobile app is involved in a number of claim elements. It is the equivalent of the carrier when it receives the checks for imaging, assigns a unique identifier to the imaging to be done, is designed to permit one front and back image of the checks, and permits alignment of the check in a specific manner for imaging. The mobile app also does the elements of imaging of fronts and backs of checks and separate transmission of those images.

The following elements of Claim 1 are literally infringed.

*Securing the negotiable instrument to the carrier.*

It is the equivalent of the carrier when it receives the checks for imaging, assigns a unique identifier to the imaging to be done, is designed to permit one front and back image of the checks, and permits alignment of the check in a specific manner for imaging. The mobile app also does the elements of imaging of fronts and backs of checks and separate transmission of those images.

*Creating an identifier on a front side and back side of the carrier, the identifier being unique to the carrier and associated therewith.*

A mobile phone is used as an imaging device and the front and back of the check are imaged separately.  The check is supported on a surface and the image of the check includes the surface. Upon information and belief, each check image is transmitted in a data packet containing the user's account number, amount of the check, check number and a designation of "front" or "bank" to indicate which side of the check is being transmitted. After both check images are transmitted separately the check images are received by Defendant's server where the "front" and "back" check images are combined to make a negotiable instrument pursuant to statute.

*Generating an electronic image of the front and back of the negotiable instrument along with the unique identifier on the carrier while the negotiable instrument is secured to the carrier.*



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). A mobile phone with a camera is used to capture images of the front and back of the check which upon information and belief encapsulates each check image with unique identifiers as described herein.

*Transmitting the electronic image of the front and back of the negotiable instrument and the unique identifier to a remote location; and*

▼ **How do I get started with Ally eCheck Deposit℠?**

To make a deposit using the **Ally Mobile App**: Log in, choose your account and tap **Deposit Checks**. Snap a picture of both sides of your endorsed check then submit your deposit.

To make a deposit **online**: **Upload** scanned images of the front and back of your endorsed check then submit your deposit.

**Source**: https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019).

Upon information and belief, 1) the check images are received by the bank, 2) the images of the front and back of the check are broken down from the captured images, and 3) the images are paired using a unique identifier, as they were separately transmitted.

*Pairing, at the remote location, the front image of the negotiable instrument having the associated unique identifier to a separately received corresponding back image of the negotiable instrument having the associated unique identifier, to provide a complete image of the negotiable instrument.*

Upon information and belief, the images are paired using a unique identifier, as they were separately transmitted. Each check image is transmitted in a data packet containing the user's account number, amount of the check, check number and a designation of "front" or "bank" to indicate which side of the check is being transmitted. After both check images are transmitted separately, the check images are received by Defendant's server and the "front" and "back" check images are combined to make a negotiable instrument pursuant to statute.

Defendant directly infringes at least Dependent Claims 5 and 6:

*The method of claim 1 wherein, in the step of securing, the negotiable instrument is a check or deposit slip.*



**Source**: https://play.google.com/store/apps/details?id=com.ally.MobileBanking&hl=en_US (Last accessed September 19, 2019). The screenshot shows a check that is being deposited with Defendant's mobile check application.

*The method of claim 1 wherein the step of transmitting includes using one of a fax, a scanner, a device designed to transmit electronic data, other image device compatible with ITU-T recommendations T.30 or T.4, other communications protocols compatible with banking industry standards, or combination thereof.*

Defendant's mobile check deposit application enables a mobile phone's camera to take images of the front and back of a check. These images are transmitted over Wifi or the telephone communication protocol to the Defendant's servers for pairing and depositing.

57.     Defendant also infringes under 35 U.S.C. § 271(b) by inducing infringement of the '698 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, advising, encouraging, or otherwise inducing others to perform the steps and/or operate the systems claimed by the '698 patent to the injury of Plaintiff.  Defendant actively instructs their Customers to use the Accused Instrumentality in a way that infringes the '698 patent. Since at least the filing date of this Complaint, Defendant has had knowledge of the '698 patent, and by continuing the actions

described herein, has specific intent to induce infringement of the '698 patent pursuant to 35 U.S.C. §271(b).

58.    Specifically, Defendant advertises the Accused Instrumentality to its Customers, and instructs its Customers to operate the Accused Instrumentality in a way that infringes, such that when Defendant's Customers follow Defendant's instructions, the '698 patent is infringed.

59.    As discussed, Defendant has had knowledge of the '698 patent since at least the filing of the Original Complaint. Pursuant to 35 U.S.C. §271(b), by continuing the actions described above, by continuing to sell the Accused Instrumentality and instruct their Customers to use the Accused Instrumentality in an infringing manner, Defendant has had specific intent to induce infringement of the '698 patent.

60.    Defendant's Customers use the Accused Instrumentality as instructed by Defendant and in some cases as set up and installed by Defendant, and in doing so, complete all elements in at least Claims 1, 5, 6, 9, 13 and 14 of the '698 patent making Defendant's Customers direct infringers of the '698 patent.  Defendant specifically intended for its Customers to infringe the '698 patent because Defendant continues to advertise and provide to its Customers manuals and product information on their website that when followed necessarily infringe the '698 patent. *See* https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).

61.    Defendant instructs its Customers, such that when Defendant's Customers follow Defendant's instructions, each of said Customers necessarily use the Accused Instrumentality in an infringing manner as claimed in the '698 patent making Defendant's Customers direct infringers of the '698 patent. *See* https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).

62.     Defendant also infringes under 35 U.S.C. §271(c) by contributing to infringement of the '698 patent in the State of Texas, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, offering for sale, selling, or importing the Accused Instrumentality, and advising, encouraging, and contributing so that others can use the methods claimed by the '698 patent to the injury of Plaintiff.

63.     Specifically, pursuant to 35 U.S.C. §271(c), Defendant advertises, sells, and provides the Accused Instrumentality to its Customers, and instructs its Customers, such that when Defendant's Customers follow Defendant's instructions, each of said Customers necessarily infringe one or more methods claimed in the '698 patent making Defendant's Customers direct infringers of the '698 patent. *See* https://www.ally.com/help/bank/deposits.html (Last accessed September 19, 2019).

64.     The Accused Instrumentality that Defendant provides to its Customers is designed specifically for use by their Customers in an infringing manner. The functionality described in the '698 patent is necessary for the Accused Instrumentality provided by Defendant to its Customers to work for its advertised purpose.

65.     There is no substantial non-infringing use for the Accused Instrumentality because the Accused Instrumentality is especially made or adapted for use by its Customers to infringe the '698 patent. The mobile deposit functionality in Defendant's mobile banking application was specifically designed to operate in a manner that infringes the '698 patent and the '940 patent.

66.     Defendant continues advising, encouraging, contributing, or otherwise inducing others to use the systems claimed by the '698 patent to the injury of Plaintiff.  Since at least the filing of the Original Complaint, Defendant has had knowledge of the '698 patent, and by continuing the actions described above, has specific intent to induce infringement of the '698

patent pursuant to 35 U.S.C. §271(b), and has further contributed to said infringement of the '698 patent by their Customers by providing them with the Accused Instrumentality so that their Customers could directly infringe the '698 patent pursuant to 35 U.S.C. § 271(c).

67.    Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

68.    To the extent 35 U.S.C. § 287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '940 and '698 patents.

69.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of the Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70.    This case is an exceptional case and Plaintiff is entitled to three times its damages and attorney's fees due in part to Defendant's pre-suit notice of the patents in suit in this case and the resulting egregious conduct of designing, using, marketing, selling and providing the Accused Instrumentality to Defendant's Customers, pursuant to 35 U.S.C. §284 and 35 U.S.C §285.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against the Defendant, and that the Court grant Plaintiff the following relief:

A.  a judgment that Defendant directly and/or indirectly infringes one or more claims of the '940 and '698 patent;

B.  award Plaintiff damages in an amount adequate to compensate Plaintiff for Defendant's infringement of the claims of the '940 and '698 patent, but in no event less than a reasonable royalty, supplemental damages and enhanced damages for any continuing post-verdict infringement until entry of the final judgment with an accounting as needed, under 35 U.S.C. §284;

C.  award Plaintiff enhanced damages of 3 times the amount of the final judgement for Defendant's pre-suit knowledge of the '940 and '698 patents and willful infringement of the '940 and '698 patents pursuant to 35 U.S.C. §284;

D.  a permanent injunction pursuant to 35 U.S.C. §283, enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '940 and '698  patents, or such other equitable relief the Court determines is warranted;

E.  award Plaintiff pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest, pursuant to 35 U.S.C. §284, from the date of each act of infringement of the '940 and '698 patent by Defendant to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. §1961, continuing until such judgment is paid, at the maximum rate allowed by law; and an accounting of all damages not presented at trial;

F.  a judgment and order finding this to be an exceptional case and requiring Defendant to pay the costs of this action (including all disbursements), and attorneys' fees pursuant to 35 U.S.C. §285;

G.  award a compulsory future royalty for the '940 and '698 patent; and award such further relief as the Court deems just and proper.

Dated: October 12, 2019                          Respectfully submitted,

                                                 By: */s/ Paul W. O'Finan*
                                                 **HANSLEY LAW FIRM, PLLC**
                                                 Paul O'Finan
                                                 Texas Bar No.: 24027376
                                                 Austin Hansley*
                                                 Texas Bar No.: 24073081
                                                 13355 Noel Rd. STE 1100
                                                 Dallas, Texas 75240
                                                 Telephone: (972) 528-9321 Ext. 1000
                                                 Facsimile: (972) 370-3559
                                                 Email: ahansley@hansleyfirm.com
                                                 Email: pofinan@hansleyfirm.com

www.hansleyfirm.com
**ATTORNEYS FOR PLAINTIFF
LIGHTHOUSE CONSULTING GROUP,
LLC**
*pro hac vice motion to be filed*